# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GENERAL ELECTRIC Co.,**

    Plaintiff,

  -vs-                           **Case No. 14-C-1529**

**UNIVERSITY OF VIRGINIA PATENT FOUNDATION d/b/a UNIVERSITY OF VIRGINIA LICENSING & VENTURES GROUP,**

    Defendant.

## DECISION AND ORDER

General Electric won the proverbial "race to the courthouse" by filing this action on December 8, 2014 at 11:00 p.m. (CST). The University of Virginia Patent Foundation ("UVAPF" or the "Foundation") filed suit just seconds later in the Western District of Virginia, Charlottesville Division. *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, Case No. 3:13-cv-00051-NKM (W.D. Va.) The reason for this close timing was the parties' agreement to not sue each other regarding their dispute over whether GE's magnetic resonance imaging ("MRI") systems infringe upon U.S. Patent No. 7,164,268 (the "'268 patent") and Reissue Patent No. 44,644 ("RE44,644"). The forbearance agreement applied *through* December 8, and GE argues that it only had to wait until it became December 9 on the east coast to file suit. The Foundation disagrees, arguing that local time for each party, not absolute time, governs the expiration of the forbearance period. Thus, UVAPF complains that GE

won the race to the courthouse only by breaching the forbearance agreement.

This aspect of the case is interesting, if only because it offers a window into the lives and litigation tactics of patent lawyers. Ultimately, however, the dispute is academic because the Court lacks personal jurisdiction over the Foundation. Therefore, the "first-to-file" rule is irrelevant, and GE's victory in the parties' late-night e-filing race was for naught.

## Background

UVAPF is a Section 501(c)(3) nonprofit corporation operated solely for the benefit of the University of Virginia. The Foundation's primary purpose is to promote, encourage and aid scientific investigation at the University. Thus, the Foundation coordinates operations with the Rector and Visitors of the University. It has a modest operating budget that must be approved in accordance with the University's Related Foundations Policy. As a Related Foundation, UVAPF must manage itself "in a manner consistent with [its] own enabling documents and the University's purpose, mission, and procedures." UVAPF has 15 employees, all of whom are located in Charlottesville.

The Foundation owns the patents-in-suit. The '268 patent is entitled "Method and Apparatus for Spin-Echo Train MR Imaging Using Prescribed Signal Evolutions." In plain English, this technology relates to pulse sequences for magnetic resonance imaging scanners. The inventors of these

patents are professors at the University of Virginia.

GE is a for-profit New York corporation with its principal place of business in Connecticut. GE Healthcare, a major business unit of GE, has a Magnetic Resonance ("MR") division that provides a wide range of technologies and services for clinicians and healthcare administrators, including MRI systems. GE Healthcare's MR division is based in Waukesha, Wisconsin.

GE and UVAPF have been at odds since 2008 over whether GE's MRI systems infringe the '268 patent. In May 2008, UVAPF sued GE in the Western District of Virginia for infringing the '268 patent. Case No. 3:08-cv-0025-NKM (W.D. Va.) That case, which was assigned to the Hon. Norman K. Moon, proceeded through claim construction and multiple summary judgment motions before settling in 2011. Judge Moon is the presiding judge in the currently-pending parallel suit filed by UVAPF. Case No. 3:13-cv-00051-NKM (W.D. Va.)

In the first suit, the technical, marketing operations, financial, customer service, and regulatory personnel from whom documents and other discovery was taken were located in Waukesha. During the course of that action, UVAPF's representatives visited Wisconsin to conduct depositions of GE's MR employees. In addition, the GE legal and management personnel who oversaw the first UVAPF-GE action were located in Waukesha. When the

Foundation reached out to settle the case, it directed its correspondence to GE in Wisconsin. The parties settled the case before trial.

On April 15, 2014, UVAPF's patent licensing manager initiated the present dispute by sending a letter to GE in Waukesha stating that the '268 patent and RE44644 (the reissue patent) are "currently available for licensing." UVAPF also stated that "GE's MR systems included a pulse sequence called CUBE. GE may wish to have its patent counsel examine these patents … and claims … to determine whether a non-exclusive license is needed under the patents."

On May 16, GE sent UVAPF a letter from Waukesha informing UVAPF that it was in the process of reviewing the patents at issue. On August 6, GE sent another letter from Waukesha stating that, after careful review, it "determined that GE Healthcare's CUBE pulse sequence does not infringe any of the claims of the '268 or '644 patents, and therefore, does not need a license under the patents." On August 7, UVAPF responded to GE's IP counsel in Waukesha via email indicating "confus[ion]" as to "GE's response, particularly as it relates to claim 75 of the '644 patent. All fast-spin-echo pulse sequences, not just CUBE, perform the steps in claim 75 quoted in your letter …"

On August 22, the parties negotiated and entered into the aforementioned forbearance agreement. UVAPF agreed to provide GE a claim

chart describing how GE's products allegedly infringe the claims of the '268 and '644 patents. In addition, GE and UVAPF both agreed not to file suit against one another during the forbearance period. The parties later extended the forbearance period "through December 8, 2014."

GE had several written, telephonic, and in-person discussions with UVAPF during the forbearance period. Those discussions included two in-person meetings on the GE Healthcare campus in Waukesha, first on September 19 and then on November 17.

The parties were unable to reach agreement regarding UVAPF's allegations of patent infringement. On December 8, at 11:00 p.m. CST – 12:00 a.m. EST – GE filed the complaint in this case to obtain a declaratory judgment that the '268 patent is unenforceable and that GE has not infringed either the '268 or '644 patents. This Court's docket entry indicates that the complaint was filed at 11:00:55 p.m. CST. The Foundation's suit in Virginia was filed at 12:01 a.m. EST. There is no record for the number of seconds after 12:01 that the Virginia complaint was filed. At 12:00 a.m. CST, GE filed an amended complaint here in Wisconsin. The amended complaint is "substantively identical to the original complaint … being later filed in the event that Central Standard Time, rather than Eastern Standard Time, is found to apply to the expiration of the Forbearance Period …"

## Analysis

When confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing that jurisdiction over the defendant is proper. Fed. R. Civ. P. 12(b)(2); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where "the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Federal Circuit law governs this motion because the jurisdictional question is "intimately involved with the substance of the patent laws." *Wayne Pigment Corp. v. Halox*, 220 F. Supp. 2d 931, 933 (E.D. Wis. 2002) (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). Nominally, the Court is directed to proceed through a two-step inquiry. First, the plaintiff must show that the forum state's long-arm statute establishes personal jurisdiction over the out-of-state defendant. Second, the plaintiff must show that due process is satisfied. *Tecre Co. v. Buttonpro, Inc.*, 387 F. Supp. 2d 927, 930 (E.D. Wis. 2005) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123

F.3d 1455, 1458 (Fed. Cir. 1997)). However, Wisconsin's long-arm statute is liberally construed in favor of exercising jurisdiction to the fullest extent allowed under the due process clause. *Shared Med. Equip. Group, LLC v. Simi Valley Hosp. & Healthcare Servs.*, 3 F. Supp. 3d 735, 739 (W.D. Wis. 2014). Accordingly, the two-part inquiry can be collapsed into one: does the exercise of jurisdiction over the Foundation violate due process? *See Autogenomics, Inc. v. Oxford Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2012) (where the state long-arm statute is "coextensive" with due process limits, its specific provisions are moot because the court has a "single inquiry: whether jurisdiction comports with due process").

There are two types of personal jurisdiction: specific and general. To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)). Plaintiffs attempting to establish general jurisdiction "bear a higher burden." *Id.* Where the plaintiff's claims "do not arise out of or relate to the defendant's contacts with the forum State, we must explore the nature of [the defendant's] contacts with the [forum State] to determine whether they constitute …

*continuous and systematic* general business contacts." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984) (emphasis added)). In either instance, due process is satisfied when the foreign defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

GE argues that the Court may exercise jurisdiction in this case because UVAPF has created and maintained a continuing business relationship with GE's MR business unit in Wisconsin through litigation and licensing or attempted licensing of its MR patents. During a span of over six years, UVAPF or its representatives have engaged in at least four in-person visits to Wisconsin – two in connection with depositions of GE's MR employees in the first action, and two in connection with attempts to enforce the '268 and '644 patents in the present action – as well as the exchange of written and telephonic correspondence with GE's MR employees. The settlement in the first action represents a significant portion of UVAPF's licensing revenue during the relevant time period.[1]

These contacts are nowhere near enough to justify the assertion of general jurisdiction over UVAPF. General jurisdiction applies only when the

---

[1] The settlement amount was submitted under seal pursuant to a confidential settlement agreement. *See* ECF No. 20.

affiliations of a foreign corporation are so "continuous and systematic" as to "render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). A non-profit corporation founded to protect the intellectual property of researchers at the University of Virginia is not "at home" in Wisconsin simply because it previously brought a lawsuit relating to alleged infringing activities in Wisconsin. More generally, UVAPF is not "at home" in Wisconsin by virtue of its attempts to stop IP encroachment by GE Healthcare in Waukesha. Such a broad conception of all-purpose jurisdiction would "scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 762 (quoting *Burger King Corp.*, 471 U.S. at 472)).

*Goodyear* clarified that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. … With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction.' Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable." *Daimler* at 760 (discussing *Goodyear*). This is not to say that a corporation "may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business

- 9 -

…" *Id.* (emphasis in original). But it is to say that the exercise of general jurisdiction in *every* State "in which a corporation 'engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping." *Id.* at 761. UVAPF's contacts with Wisconsin were not "substantial, continuous, and systematic" in any event.

In the absence of general jurisdiction, the Court turns to specific jurisdiction. *Goodyear*, 131 S. Ct. at 2854 (explaining that "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction plays a reduced role"). Here, the Court considers whether UVAPF purposefully directed its activities at residents of Wisconsin, whether the claim arises out of or relates to those activities, and whether the assertion of personal jurisdiction is reasonable and fair (i.e., whether it comports with "fair play and substantial justice"). *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). This analysis is "trained on the 'relationship among the defendant, the forum, and the litigation,' …" *Daimler* at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

In conducting this analysis, the Federal Circuit draws a clear distinction between an "ordinary patent infringement suit" and "an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, …" *Avocent*, 552 F.3d at 1332. In the former type of suit, "the jurisdictional inquiry is relatively easily discerned from the nature and extent of the

commercialization of the accused products or services by the defendant in the forum." *Id.* In a declaratory judgment action, by contrast, "the patentee is the defendant, and the claim asserted by the plaintiff relates to 'the wrongful restraint [by the patentee] on the free exploitation of non-infringing goods … [such as] the threat of an infringement suit.'" *Id.* (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). GE's action falls into the latter category.

Regarding such actions, the "alleged injury arises out of the threat of infringement as communicated in an 'infringement letter,' and the patentee may have little contact with the forum beyond this letter. While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee, … 'letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not suffice to create personal jurisdiction." *Avocent* at 1333 (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202, 1206 (Fed. Cir. 2003) (emphasis in original)). "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Red Wing Shoe* at 1360-

61.

Accordingly, for "the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be '*other activities*' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Silent Drive* at 1202 (emphasis added). Examples of such "other activities" include "initiating judicial or extra-judicial enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent* at 1334-35 (collecting cases). These "other activities" are relevant because they "relate to the *enforcement* or *the defense of the validity* of the relevant patents." *Id.* at 1334 (emphases in original). For example, an exclusive license typically obliges the patentee to "defend and pursue any infringement against the [relevant] patent." *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995). Thus in *Akro*, the patentee's "exclusive license agreement" with the plaintiff's "local competitor … undoubtedly relate[d] to [the plaintiff's] challenge to the validity and enforceability of the … patent." *Id.* at 1548-49.

UVAPF has never sued to enforce its MRI patents in Wisconsin. Instead, UVAPF sued GE for patent infringement in Virginia. Further, UVAPF doesn't have exclusive licensing arrangements with any Wisconsin residents or entities doing business in Wisconsin. UVAPF and GE Healthcare

engaged in licensing negotiations regarding the reissue patent, but those negotiations were ultimately unsuccessful. "The mere solicitation of business by a foreign person does not constitute transacting business in the state. To be doing business, negotiations must ultimately lead to a 'substantial connection' with the forum, creating an affirmative obligation there." *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354-55 (Fed. Cir. 2002). In *Hildebrand*, the patentee's "offers to do business" and "warning letters coupled with offers to negotiate" were not enough to subject the patentee to jurisdiction in the forum state. So it is here. *Compare Inamed*, 249 F.3d at 1363 (finding specific jurisdiction due to "the combination of [an] infringement letter and … negotiation efforts which culminated in four [exclusive] license agreements").

## Conclusion

This Court cannot exercise jurisdiction over UVAPF consistent with the requirements of due process. Therefore, UVAPF's motion to dismiss for lack of jurisdiction [ECF No. 9] is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly. GE's collateral motions (to seal and to file a sur-reply brief) [ECF Nos. 20 and 25] are **GRANTED**.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2015.

**SO ORDERED:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**